UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

APR 3 0 2003   JS

MICHAEL N. MILBY, CLERK OF COURT

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HARVEN MICHAEL MCKENZIE, | § | JOINTLY ADMINISTERED |
| | § | UNDER CASE NO. |
| DEBTOR | § | 95-47219-H5-7 |
| | § | CHAPTER 7 |
| TIMOTHY STEWART MCKENZIE, | § | |
| | § | |
| DEBTOR | § | |
| | § | |
| STEVEN DARRYL MCKENZIE, | § | |
| | § | |
| DEBTOR | § | |

| | | |
|---|---|---|
| W. STEVE SMITH, TRUSTEE | § | |
| Plaintiff | § | |
| | § | ADVERSARY NO. 97-4155 |
| VS. | § | |
| | § | |
| HARVEN MICHAEL MCKENZIE, | § | |
| MCKENZIE METHANE POLAND CO., | § | CONSOLIDATED FOR TRIAL WITH |
| EUROGAS, INC., WOLFGANG RAUBALL, | § | ADVERSARY NO. 97-4114 |
| REINHARD RAUBALL, MCK | § | |
| DEVELOPMENT, CLARON N.V., | § | |
| JEFFREY, LTD., OKIBI N.V., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COMES, EuroGas, Inc. ("EuroGas") and Wolfgang Rauball and Reinhard Rauball

(together referred to hereinafter as the "Rauballs" and with EuroGas, referred to as the

"Defendants") subject to the Rauballs' claim of lack of personal jurisdiction pursuant to

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF – Page 1**

Fed.R.Civ.P. 12(b)(2), and file this, their Joint Motion to Dismiss Trustee's Third Amended Complaint and Supporting Brief, seeking dismissal of all or some of the causes of action asserted herein pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012, and in support thereof would respectfully show the Court as follows:

## I. SUMMARY OF ARGUMENT

The Third Amended Complaint or, alternatively, some of the causes of action asserted therein, must be dismissed since they fail to state claims upon which relief can be granted under applicable law and the Court lacks personal jurisdiction over the Rauballs.

The damage claims for turnover under Section 542 must be dismissed since they improperly assume a statutory violation. In addition, the EuroGas shares titled in the foreign entities do not constitute property of the estate, nor has there been a finding that they do. Moreover, these claims are based on the false assumption that a reverse piercing of the corporate veil merges the entities' assets with the bankruptcy estate. Even if Trustee is successful in obtaining the equitable remedy of veil piercing, the assets do not merge into the estate. These claims further fail since the statute does not apply extraterritorially. Finally, with regard to Wolfgang Rauball, the Complaint contains no allegations nor can any be fairly inferred that he possessed or controlled the purported property as it is alleged that the shares were transferred to Reinhard Rauball.

These flaws equally apply to Trustee's damage claim under Section 543. In addition to these points, this claim fails since there are no allegations upon which to infer that Reinhard Rauball was a "custodian" as that term is defined in the Bankruptcy Code.

The cause of action for breach of contract must be dismissed since there is a pending

action in this Court asserting the same claims and the same parties. The claims of fraudulent inducement fail since the Complaint fails to satisfy the particularity requirement of Fed.R.Civ.P. 9(b) and there are no allegations nor can any be inferred that the alleged statements were known to be false when made or were made without knowledge of the truth.

The claim for conversion fail since the Complaint's allegations evidence that the purported transfers to the Rauballs were consensual, the estate did not possess the property and there exists no allegations of lack of consent. The claim further fails since Texas law does not apply since the alleged conduct occurred and the purported property is located in Germany.

The claim for misappropriation fails since the doctrine applies only in the context of unfair competition and intellectual property cases. The claim for post-petition avoidance fails since it is overly vague and ambiguous and violates Fed.R.Civ.P. 8.

The claims of civil conspiracy and aiding and abetting civil conspiracy fail since Trustee has no standing to assert this claims, the Complaint's allegations evidence no meeting of the minds as between McKenzie and Defendants, no civil conspiracy can exist between EuroGas and its officers and agents and, as these claims are derivative claims, the Complaint fails to allege an underlying tort.

The claims of fraudulent transfer fail since Texas Business Corporation Act Section 5.14L is not applicable and it does not provide a corporation's shareholders standing to assert creditors' claims. These claims further fail since fraudulent transfer claims are not derivative claims of the corporation. Moreover, the statute applies only to domestic, not foreign corporations. Finally, the Texas Business Corporation Act does not apply to transactions undertaken by foreign entities in Europe.

The claims for reverse piercing of the corporate veil fail since Trustee does not have standing to assert such claims in light of changes to Texas law since the Fifth Circuit rendered *S.I. Acquisition*. This claim is further flawed since the Complaint does not seek to pierce the corporate veils of the entities based on a theory of "alter ego" but rather under a fraud theory. Under Fifth Circuit precedent, however, a reverse piercing of the corporate veil can only be obtained by a showing of "alter ego." Moreover, the Complaint is devoid of any factual allegations or pleading requisites to support a finding of alter ego.

In light of the Complaint's deficiencies as identified below, the Complaint or, alternatively, some of the causes of action asserted must be dismissed for failing to state claims upon which relief can be granted in accordance with Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

In addition, as previously raised in this proceeding, and in preserving such defense, the Rauballs submit that the Complaint must be dismissed in accordance with Fed.R.Civ.P. 12(b)(2), made applicable hereto by Fed.R.Bankr.P. 7012. as to them as the Court lacks personal jurisdiction over them.

### III.  FACTUAL AND PROCEDURAL BACKGROUND

Trustee received his appointment in the case of Harven Michael McKenzie ("McKenzie") on October 30, 1995.[1]

This action involves two consolidated adversary proceedings, Adversary No. 97-4114

---

[1] Trustee is also the appointed trustee in the cases of Timothy Stewart McKenzie, filed on November 1, 1995, and Steven Darryl McKenzie, filed on December 27, 1995. (The three debtors collectively referred to herein as the "Debtors").

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF** – Page 4

(the "Intervention Suit"), commenced by Trustee on February 28, 1997, and Adversary No. 97-4155 (the "Fraudulent Transfer Suit") filed on March 25, 1997.

By Order entered on February 22, 2000, the Court granted Trustee's request to file a first amended complaint.  Thereafter, on March 8, 2000, Trustee filed his First Amended Complaint, through which Trustee added the Rauballs as defendants in this action.

On July 28, 2000, the Rauballs filed their Motion to Dismiss and a supporting brief, asserting that the First Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.

On August 10, 2000, EuroGas filed its Motion to Dismiss First Amended Complaint or, Alternatively, for More Definite Statement and Supporting Memorandum of Law, which was amended on September 22, 2000.[2]

On March 18, 2002, the Court heard arguments on EuroGas' and the Rauballs' dismissal motions.

By Order entered on or about September 10, 2002, the Court denied the Rauballs' dismissal motion finding that a determination of the Court's personal jurisdiction needed to await full development of facts through trial on the merits, and ordered Trustee to file a more definitive statement of his complaint.

On November 11, 2002, Trustee filed his Trustee's Motion and Reply to Response of Defendants' to Trustee's Second Motion for Leave to Amend and Supplement Pleadings and to

---

[2]  EuroGas had earlier filed a Motion to Dismiss the Intervention Suit (the "Initial Dismissal Motion") on June 2, 1997, seeking dismissal of that suit on the basis that the avoidance provisions of the Bankruptcy Code do not apply extraterritorially and the Court lacked personal jurisdiction over them.

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF – Page 5**

Drop Certain Defendants (the "Third Leave Motion").

By Order entered on March 13, 2003, the Court granted the Third Leave Motion. Thereafter, on or about March 18, 2003, Trustee filed his Third Amended Complaint (hereinafter referred to as the "Complaint").

The causes of action asserted in the Complaint include (i) Breach of Fiduciary Duty – McKenzie, (ii) Violation of Section 542 – Reinhard Rauball, (iii) Violation of Section 543 – Reinhard Rauball, (iv) Violation of Section 542 – Wolfgang Rauball, (v) Breach of Contract – EuroGas (vi) Fraud in the Inducement – EuroGas, (vii) Conversion – the Rauballs, (viii) Misappropriation of Assets and Post-petition transfers – McKenzie and the Rauballs, (ix) Civil Conspiracy/Aiding and Abetting – McKenzie, EuroGas and the Rauballs, (x) Fraudulent Transfers from MMPCO to Claron, Okibi, MCK and Jeffrey (Under Tex. Bus. Corp. Act Section 5.14(L)), (xii) Fraudulent Transfers from Claron, Okibi, MCK, and Jeffrey to ENYGL and EGA (Under Tex. Bus. Corp. Act Section 5.14(L)), (xiii) Avoidable Transfers, and (xiv) Disregard of Corporate Separateness as to MMPCO, MCK, Claron, Okibi and Jeffrey.

### III. RELIEF REQUESTED

Defendants move pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012, to dismiss the Complaint or, alternatively, some of the counts asserted thereon, on the basis that the causes of action asserted fail to state a claim upon which relief can be granted as to them.

The Rauballs further move pursuant to Fed.R.Civ.P. 12(b)(2), made applicable hereto by Fed.R.Bankr.P. 7012, to dismiss the Complaint as to them since the Court lacks personal

jurisdiction.[3]

## IV. ARGUMENTS AND AUTHORITIES

The Complaint or, alternatively, some of the causes of action asserted therein must be dismissed since they fail to state claims upon which relief can be granted in accordance with Fed.R.Civ.P. 12(b).

Under this standard, a complaint may be dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-56 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996).

While the Court is to accept all well-pleaded facts as true and view those facts in the light most favorable to Trustee, the Complaint "must contain either direct allegations on every material point necessary to sustain a recovery. . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be produced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Dismissal is proper where the complaint lacks an allegation in regards to a required element necessary to obtain relief. *Id.* Moreover, the "court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint." *Id.* In addition, "'conclusory allegations or legal conclusions masquerading as

---

[3] The Rauballs incorporate by reference the affidavits, arguments and authorities contained in and/or attached to their Motion to Dismiss and supporting brief filed on or about July 29, 2000, as if same were expressly set forth herein.

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED
COMPLAINT AND SUPPORTING BRIEF – Page 7**

factual conclusions will not suffice to prevent a motion to dismiss.'" *Id*; *Walker v. South Central Bell Telephone Co.*, 904 F.2d 275, 277 (5th Cir. 1990) (two reasons exist for a pleading to fail to state a claim upon which relief can be granted –either "the law simply may not afford relief on the basis of the facts alleged in the complaint" and "regardless of whether the plaintiff is entitled to relief, the pleadings may be so badly framed that the plaintiff is not entitled to a trial on the merits.").

In this instance, the law simply does not afford relief on the basis of the facts alleged in the Complaint or which can be fairly inferred therefrom.[4] Consequently, the Complaint or, alternatively, some of the causes asserted must be dismissed.

> **A.      Claim for Violation of Duty to Turnover Assets of Estate Under Section 542 Against Reinhard Rauball Fails to State a Claim Upon Which Relief Can Be Granted Since (1) it Assumes a Statutory Violation, (2) the EuroGas Shares Titled in Claron, Okibi, MCK and Jeffrey Do Not Constitute Property of the Estate and (3) Section 542 <u>Does Not Apply Extraterritorially</u>.**

Trustee's claim for violation of duty to turnover assets of estate under Section 542 of the Bankruptcy Code against Reinhard Rauball fails to state a claim upon which relief can be granted since (1) it does not seek an order requiring turnover of property of the estate, but rather assumes that there has been a violation of Section 542, (2) the EuroGas shares titled in Claron, Okibi, MCK and Jeffrey (collectively, hereinafter referred to as the "Foreign Entities") do not constitute property of the estate and (3) Section 542 does not apply extraterritorially as to Reinhard Rauball.

---

[4] Defendants submit that under either federal or Texas law the Complaint fails to state a claim upon which relief can be granted. However, Defendants preserve and do not waive their argument that Texas law is not applicable. Defendants contend that the Court must undertake a choice of law analysis to determine the applicable law. As previously set forth in EuroGas' motion to dismiss, since the transactions involved in this suit were primarily conducted in Europe, MMPBV was a Netherlands company, EuroGas is a Utah corporation and the Rauballs are German citizens residing in Europe, Texas law does not necessarily apply.

Section 542 requires that an entity in possession, custody, or control of property that the trustee may use, sell or lease under Section 363 deliver such property to the trustee. There has been no legal adjudication that the property in issue – shares of EuroGas legally titled in the Foreign Entities – constitute property of the estate or that these entities are McKenzie's alter egos. To date there has only been a claim by Trustee that the shares are property of the estate. *Maiz v. Virani, et al.*, 311 F.3d 334 (5th Cir., 2002) (mere conclusory allegations of alter ego and no legal adjudication of entities' substantive rights were insufficient to allow judgment creditor to obtain turnover of property titled in offshore trusts). A person is not, nor should be, required to independently make these legal conclusions particularly when property is legally titled in a third party.

Absent a determination that these entities constitute McKenzie's alter egos or that the property constitutes property of the estate for purposes of Section 542, there can be no violation of that statutory provision.[5]

Trustee's position is further flawed since as the Complaint alleges, the EuroGas shares are legally titled in the Foreign Entities, and thus, the shares do not constitute property of the estate. See *Maiz*, supra. Trustee incorrectly assumes that if successful on his claim of reverse piercing the corporate veil as to the Foreign Entities, their assets – the EuroGas shares – become property of the estate. This position is contrary to well defined and accepted principles of corporate law and equity.

---

[5] Under Section 542, the Trustee has the burden of proving, with clear and convincing evidence, that the property in issue, constitutes property of the estate. See *In re Amdura Corp.*, 167 B.R. 640, 644 (D.Colo 1994), citing *Evans v. Robbins*, 897 F.2d 966, 968 (8th Cir. 1990); *see also Maggio v. Zeitz,* 333 U.S. 56, 63-63 (1948).

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF – Page 9**

First, as the Supreme Court recently observed in *Dole Food Company v. Patrickson*, 2003

U.S. LEXIS 3242 (April 22, 2003),

> A basic tenet of American corporate law is that the corporation and its
> shareholders are distinct entities. See, *e.g., First Nat. City Bank* v. *Banco Para el
> Comercio Exterior de Cuba*, 462 U.S. 611, 625 (1983) ("'Separate legal
> personality has been described as ''an almost indispensable aspect of the public
> corporation'' ''''); *Burnet* v. *Clark*, 287 U.S. 410, 415 (1932) ("'A corporation and
> its stockholders are generally to be treated as separate entities''''). An individual
> shareholder, by virtue of his ownership of shares, does not own the corporation's
> assets and, as a result, does not own subsidiary corporations in which the
> corporation holds an interest. See 1 Fletcher Cyclopedia of the Law of Private
> Corporations §§31 (rev. ed. 1999).

*Id*. at *12-13. Thus, even assuming McKenzie is the sole shareholder in the Foreign Entities, as

of the Petition Date, did not own the entities' assets.

Second, piercing the corporate veil is not itself an independent cause of action, "but rather

is a means of imposing liability on an underlying cause of action." *Peacock v. Thomas*, 516 U.S.

349, 354 (1996), quoting 1 C. Keating & G. O'Gradney, Fletcher Cyclopedia of Law of Private

Corporations §§ 41, p. 603 (perm. ed. 1990). Texas law clearly regards the alter ego remedy as an

equitable doctrine. *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 358;

*Grothues v. Internal Revenue Service (Matter of Grothues)*, 226 F.3d 334, 337-8 (5th Cir. 2000)

(recognizing that alter ego theory is simply a remedy not a claim).

The effect of an alter ego finding, however, is not a merger of assets. As this Court has

previously recognized in relation to the piercing of McKenzie Methane Corp. as an alter ego of

Michael McKenzie, "[t]he collapsing of the bankruptcy assets and liabilities of MMC and

Michael McKenzie into one entity does not serve to merge the two separate assets of the estates

into one asset. To the contrary, use of the alter ego doctrine enlarges the pool of assets available

to legitimate creditors." *In re McKenzie Energy Corp. et al.*, 228 B.R. 854, 870 (Bankr. S.D. Tex. 1998). Similarly, a successful reverse piercing remedy as to the Foreign Entities would not merge the assets of these entities, but would simply enlarge the pool of assets available to satisfy creditors' claims. The assets not being "merged" through the remedy of alter ego, Trustee cannot establish that the assets of the Foreign Entities (the EuroGas shares) constitutes property of the estate for purposes of Section 542 of the Bankruptcy Code.

Finally, Section 542 of the Bankruptcy Code does not apply extraterritorially to Reinhard Rauball, a German citizen residing in Germany relating to assets purportedly conveyed to him by a foreign third party in Europe. Likewise, the Court lacks personal jurisdiction over him.

For the foregoing reasons, this cause of action fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

> **B.    Claim for Violation of Duty of Turnover Under Section 543 Against Reinhard Rauball Fails to State a Claim Upon Which Relief Can Be Granted Since (1) it Assumes a Statutory Violation, (2) Reinhard Rauball is Not a Custodian Under the Statute, (3) the EuroGas Shares Titled in Claron, Okibi, MCK and Jeffrey Do Not Constitute Property of the Estate and (4) <u>Section 543 Does Not Apply Extraterritorially</u>..**

Trustee's claim for violation of duty of under Section 543 of the Bankruptcy Code against Reinhard Rauball fails to state a claim upon which relief can be granted since (1) it assumes a finding of alter ego and a violation of the statute, (2) neither the Complaint's alleged facts nor those that can fairly be drawn from it show that Reinhard Rauball is a "custodian" as that term is statutorily defined, (3) the EuroGas shares titled in the Foreign Entities do not constitute property of the estate and (4) Section 542 does not apply extraterritorially as to Reinhard Rauball.

Section 543 requires a custodian to deliver to the trustee property of the debtor. As asserted above, there has been no legal adjudication of whether the Foreign Entities are McKenzie's alter egos nor whether the property in issue constitute property of the debtor. Until such determinations have been made, Trustee's cause of action for violation of Section 543 fails to state a claim upon which relief can be made. *See Bunter v. United States*, 440 U.S. 48, 55 (1979) (state law defines property rights); *Maiz v. Virani, supra.*

Moreover, the term "custodian" is defined in Section 101(11) of the Bankruptcy Code to mean:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under [title 11];
>
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
>
> (C) trustee, receiver or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

Since the statutory definition uses the term "means," the definition of "custodian" in Section 101(11) of the Bankruptcy Code is an exclusive definition. See *Gorman v. Commissioner of Internal Revenue*, 302 U.S. 82, 86 (1937) ("when an exclusive definition is intended the word 'means' is employed"); *Aero-Fastener, Inc. v. Saracen Corp. (In re Aero-Fastener, Inc.)*, 177 B.R. 120, 137 (Bankr. D.Mass. 1994) (use of the term "means" rather than the word "includes" suggests an exclusive definition).

While the Third Amended Complaint alleges that Reinhard Rauball was a "trustee" in possession of EuroGas shares purportedly owned by the Foreign Entities and Schlegel, there are no allegations nor can any be inferred that would support the proposition that any such trust

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED**
**COMPLAINT AND SUPPORTING BRIEF – Page 12**

relationship falls within the categories identified in Section 101(11) of the Bankruptcy Code.

Moreover, as stated above, the EuroGas shares do not constitute property of the estate nor would they even upon Trustee successfully obtaining a alter ego finding since such finding does not have the effect of merging the assets of the Foreign Entities into the estate.

Finally, Section 543 of the Bankruptcy Code does not apply extraterritorially to Reinhard Rauball, a German citizen residing in Germany relating to assets purportedly conveyed to him by a foreign third party in Europe.  Likewise, the Court lacks personal jurisdiction over him.

For the foregoing reasons, this cause of action fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

C. **Cause of Action for Violation of Duty of Turnover Pursuant to Section 542 Against Wolfgang Rauball Fails to State a Claim Upon Which Relief Can Be Granted Since (1) it Assumes a Statutory Violation, (2) the EuroGas Shares Titled in Claron, Okibi, MCK and Jeffrey Do Not Constitute Property of the Estate and (3) Section 542 Does Not Apply Extraterritorially.**

Trustee's claim for violation of duty to turnover assets of estate under Section 542 of the Bankruptcy Code against Wolfgang Rauball fails to state a claim upon which relief can be granted since (1) it does not seek an order requiring turnover of property of the estate, but rather assumes that there has been a violation of Section 542, (2) the EuroGas shares titled in Foreign Entities do not constitute property of the estate, (3) the Complaint fails to allege that Wolfgang Rauball ever possessed the property at issue, and (4) Section 542 does not apply extraterritorially as to Wolfgang Rauball.

As asserted previously, there can be no violation of Section 542 until there is a legal determination that the property in issue constitutes property of the estate.  As stated above, the

shares titled in the Foreign Entities does not constitute property of the estate nor upon a determination of alter ego will those assets merge into the estate. Moreover, Trustee's conclusory allegations and claims will not suffice. Moreover, a person is not, nor should be, required to independently make these legal conclusions particularly when property is legally titled in a third party.

More importantly, Section 542 requires that an entity be in possession, custody and control of property of the estate. The Complaint does not allege that Wolfgang Rauball was ever in possession, custody or control of the property in question; rather it alleges that the EuroGas shares were held by Schlegel who forwarded them to the Petenes Foundation at the direction of McKenzie. These shares were then allegedly forwarded to Reinhard Rauball. Trustee's asserted basis for Wolfgang Rauball's liability under this count is his role in negotiating and facilitating transactions relating to these shares. This role, however, does not satisfy the requirements of Section 542(a). As the Complaint reflects, the shares were never in Wolfgang Rauball's possession or custody. Moreover, if the allegations of the Complaint are true, control of the shares were consistently with McKenzie, not Wolfgang Rauball.

Based on the foregoing, this claim fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

**D.     Trustee's Claims for Breach of Contract and Fraud in the Inducement Against EuroGas Should Be Dismissed Since (1) There is a Pending Action in this Court Involving the Same Subject Matter, (2) Complaint Fails to Satisfy the Elements for Fraudulent Inducement, and (2) Fraud is Not Pled With <u>Particularity</u>.**

The Complaint's claim for breach of contract and fraud in the inducement should be dismissed since there is a pending action in this Court involving the same subject matter and the same parties in the same court.  Moreover, the Complaint fails to satisfy the elements of fraudulent inducement and the allegations of fraud are not pled with particularity as required by Fed.R.Civ.P. 9(b).

The Fifth Circuit has held that a party has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant[s]." *Oliney v. Gardner,* 771 F.2d 856, 859 (5th Cir.1985), citing, *Walton v. Eaton Corp.,* 563 F.2d 66, 70 (3rd Cir.1977). "When a plaintiff files a second complaint alleging the same cause of action as a prior, pending, related action, the second complaint may be dismissed." *Friends of the Earth, Inc. v. Crown Cent. Petroleum,* 95 F.3d 358, (5th Cir. 1996), citing, *Oliney v. Gardner,* 771 F.2d 856, 859 (5th Cir.1985).

In this Court there is pending *W. Steve Smith v. EuroGas, Inc.*, Adversary No. 99-3444, filed on July 28, 1999, in which Trustee seeks damages for EuroGas' breach of the 1997 Settlement Agreement, involving the same subject matter as the breach of contract cause set forth in the Third Amended Complaint.  Moreover, Trustee's claim for fraud in the inducement in connection with that contract intimately involve the facts, circumstances and transactions involved in that other proceeding.  Consequently, these counts should be dismissed

The fraudulent inducement count should also be dismissed since the Complaint fails to

state a claim upon which relief can be granted. Under Texas law, the elements of a fraudulent inducement claim are (1) a material representation; (2) which was false; (3) which was either known to be false when made or was asserted without knowledge of the truth; (4) which was intended to be acted upon; (5) which was relied upon; and (6) which caused injury. *Shaboon v. Duncan*, 252 F.3d 722, 735 (5th Cir. 2001).

Nowhere in the Complaint is it alleged nor can it be inferred that any of the purported statements made by Landa, EuroGas' counsel, to Trustee where known to be false when made or were asserted without the knowledge of the truth. Consequently, this count fails to state a claim and should be dismissed.

This claim is further defective in that the Complaint does not satisfy the particularity requirement of Fed.R.Civ.P. 9(b). This rule requires a plaintiff to allege with particularity all averments of fraud, including the circumstances constituting fraud. The Fifth Circuit has interpreted this mandate to require that a plaintiff allege "the existence of facts and circumstances sufficient to warrant the pleaded conclusion that fraud ha[s] occurred" or face dismissal of his claim. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994), citing, *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 439 (5th Cir. 1994).

The Fifth Circuit has further concluded that fraud allegations must meet "a higher, or more strict, standard than the basic notice pleading required by Rule 8." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993); *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163 (1993) (federal rules require greater particularity in averments of fraud). Fed.R.Civ.P. 9(b) is designed "to preclude litigants from filing baseless complaints and then attempting to discover unknown wrongs." *Id.* at 521.

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF – Page 16**

An allegation of fraud, unlike most other claims, may have serious impact on the reputation of the defendant. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) *(citing Segal v. Gordon*, 467 F.2d 602, 607 (2nd Cir. 1972)). Indeed, the Rule 9(b) standard is derived from concerns that unsubstantiated charges of fraud can irreparably damage a defendant's reputation. *Segal*, 467 F.2d at 606 (stating "courts should not lend themselves to this pseudo-legal harassment").

In regards to the pleading requirements of Rule 9(b), the District Court for the Southern District of Texas has stated that they serve three purposes: "to permit defendants to respond meaningfully, to bar groundless claims as a pretext for a fishing expedition to discover unknown wrongs, and to safeguard defendants from frivolous charges that damage their reputation." *Waters v. State Farm Mutual Automobile Insurance Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994). Accordingly, fraud is not to be pled by means of conclusory allegations only. *Segal*, 467 F.2d at 606; *Waters ,*158 F.R.D. at 108 ("[s]peculative and conclusory allegations do not state a cause of action without factual support").

The plaintiff's pleading must include specific details of the time, place, contents, and nature of the activities which form the basis of the allegedly fraudulent conduct as well as identifying what was obtained through the fraud. *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir. 1992); *Seidel v. Bradberry*, 1997 WL 560774, *4 (N.D. Tex. Sept. 2, 1997); *Askanase v. Fatjo,*148 F.R.D. 570, 574 (S.D. Tex. 1993). The allegations must specify the statements the plaintiff contends are fraudulent, identity of the speaker, state where and when the statements were made and explain why the statements were fraudulent. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2nd Cir. 1994).

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF – Page 17**

The Complaint is devoid of any of these particulars as required under Fed.R.Civ.P. 9(b). Specifically, it fails to disclose precisely (i) which statements are alleged to constitute misrepresentations, (ii) how those statements were false or untrue at the time they were made, and (iii) when and how these statements and purported misrepresentations were made.

Rather then state these facts with particularity to inform EuroGas of the basis of his fraud claim, Trustee merely makes general conclusory allegations. Under applicable Fifth Circuit precedent, however, such general allegations are insufficient to support a claim for fraud. Based upon these deficiencies, it is clear that the claim of fraudulent inducement fails to state a claim upon which relief can be granted and should be dismissed under Fed.R.Civ.P. 9(b) and12(b)(6).

**E. The Claims of Conversion Against Reinhard Rauball and Wolfgang Rauball Fail to State Claims Upon Which Relief Can Be Granted Since (1) the Shares Were Voluntarily Transferred, (2) the Estate Did Not Have and Interest in the Shares at the Time of the Transfer, (3) the Complaint Fails to Plead Lack of Consent, and (4) Texas Law is Inapplicable Since the Alleged Wrongful <u>Conduct Occurred, and the Property is Located, in Germany</u>.**

The claims for conversion against Reinhard Rauball and Wolfgang Rauball fail to state claims upon which relief can be granted and should be dismissed.

Trustee seeks to recover damages based on the contention that the Rauballs' control over the EuroGas shares titled in the Foreign Entities and their refusal to turnover those shares to Trustee upon learning of the McKenzie bankruptcy proceeding constitutes an unauthorized and unlawful assumption and exercise of dominion and control over property of the estate. These allegations fail to state a claim for conversion.

First, there are insufficient allegations or inferences therefrom to substantiate a claim for conversion. Under Texas law, conversion is the unauthorized and wrongful assumption and

exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with, the other person's rights. *Waisath v. Lack's Stores Inc.*, 475 S.W.2d 444, 446 (Tex. 1971); *Grynberg Production Corp. v. British Gas, P.L.C.*, 817 F.Supp. 1338, 1364 (E.D. Tex. 1993). Trustee must establish some interest in the purportedly converted property at the time of the conversion. *Grynberg*, 817 F.Supp. at 1364; *Lone Star Beer, Inc. v. Bank of Odessa*, 468 S.W.2d 930, 934 (Tex. App. – El Paso 1971, ref. n.r.e.) (plaintiff must have been the owner of the property, possessed the property, or had the right to possess the property at the time of conversion); *Guinn v. Lokey*, 249 S.W.2d 185, 186 (Tex. 1952).

The Fifth Circuit applied these elements to deny a trustee's claim for conversion when pre-petition the debtor had transferred property to the defendant. *Mack v. Newton*, 737 F.2d 1343 (5th Cir. 1984). In that case, the Fifth Circuit recognized that under Texas law, conversion involves a taking or property without the owner's consent, and that there can be no conversion where the owner has expressly or impliedly assented to the taking or disposition. *Id.* at 1354. Texas law requires that one must at the time of the conversion either have some character of ownership interest in the specific property converted or be in legal possession of it or then entitled to its possession. 737 F.2d at 1355. The Fifth Circuit concluded that the debtor's creditors did not at the time of the alleged conversion have an ownership interest in the specific property allegedly converted, possession, or right to immediate possession of the property. *Id.*

In the instant case, there are no allegations, nor could any be inferred, that either Wolfgang Rauball or Reinhard Rauball took property without the respective owner's consent. The Complaint alleges that the shares were held by Schlegel, who transferred them to the Petenes Foundation, which then forwarded the shares to Reinhard Rauball. Thus, the estate did not

possess the shares at the time they were transferred to Reinhard Rauball prior to the Petition Date.

Moreover, neither Trustee nor the estate was the owner of the property at the time they were transferred.  The shares are legally registered to the Foreign Entities.  Moreover, the estate did not possess the shares.  Until there is a legal adjudication that these entities are the alter egos of McKenzie, Trustee cannot establish any interest of the estate in the shares or a right to possess the shares.

The Complaint is further deficient since it fails to allege lack of consent nor can such fact be fairly drawn from it. See *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1125 (5th Cir. 1988) (lack of consent is an element of conversion for which plaintiff has burden to plead and prove).  The Complaint itself alleges that the EuroGas shares were voluntarily transferred to Reinhard Rauball.  Taking the Complaint's allegations as true, Trustee cannot establish a conversion of the shares.

Finally, this claim should be dismissed since Texas law does not apply under Texas choice of law provisions.  Since the alleged wrongful conduct occurred and the purported property is located in Germany, Rauballs submit that Texas law is not applicable.

Thus, the claim for conversion fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

F.     **The Claim for Misappropriation of Assets and Post-Petition Avoidable Transfers Against Wolfgang Rauball and Reinhard Rauball Fail to State Claims Upon Which Relief Can Be Granted and Are Overly Vague and Ambiguous.**

The claims for misappropriation of assets and post-petition transfers against the Rauballs fail to state claims upon which relief can be granted and are overly vague and ambiguous.

Trustee alleges that concealment of pre-petition transfers recoverable by the estate and the concealment of transfer of the property of the estate constitutes misappropriation of estate assets.

Defendants submit that there is no such cognizable cause of action under bankruptcy or Texas law.  To the extent there exist Chapter 5 causes of action that allow recovery of pre-petition or post-petition claims, Trustee may seek to assert those causes of action.  Concealment does not constitute misappropriation.  The doctrine of misappropriation involves the appropriation and use by the defendant, in competition with the plaintiff, of a unique pecuniary interest created by the plaintiff through the expenditure of labor, skill and money. *See Universal City Studios, Inc. v. Kamar Industries, Inc.*, 1982 WL 1278 (S.D. Tex., Sept. 20, 1982 ).  The usual context is the misappropriation of trade secrets or corporate assets by a fiduciary.  Cf. *Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990) (claim that shareholder misappropriated corporation's assets belonged to corporation rather than another shareholder); *Smith Protective Services v. Martin*, 711 S.W.2d 675 (Tex. App. – Dallas,1986) (suit concerning misappropriation of trade name and corporate assets).

Under Texas law the elements of misappropriation are:

(i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff,

and (iii) commercial damage to the plaintiff.

*United States Sporting Products, Inc., et al. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App. – Waco 1993, *writ den'd*).

On its face, the Complaint neither alleges the requisite elements of misappropriation nor states a claim for same.  Accordingly, Trustee's claim for misappropriation fails to state a claim upon which relief may be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Trustee further alleges that "the transfers/conversion of estate property without Court approval or Code provision is avoidable" and that "[t]he transfers are void."  These allegations are so devoid of information or detail to provide adequate notice of the claim.  Thus, it violates Fed.R.Civ.P. 8.  Moreover, there are no allegations that the Rauballs received any transfers in their individual capacities.

Finally, this claim should be dismissed since Texas law does not apply under Texas choice of law provisions.  Since the alleged wrongful conduct occurred and the purported property is located in Germany, Rauballs submit that Texas law is not applicable.

Consequently, these asserted causes of action would fail to state claims upon which relief can be granted and should be dismissed under Fed.R.Civ.P. 12(b)(6).

> **G.**      **The Claims of Civil Conspiracy and Aiding and Abetting Civil Conspiracy Against Wolfgang Rauball, Reinhard Rauball and EuroGas Fail to State a Claim Upon Which Relief Can be Granted Since (1) Trustee Has No Standing to Pursue Such Claims, (2) the Complaint's Factual Allegations do Not Support a Meeting of the Minds Between McKenzie and Defendants, (3) a Corporation and its Officers and Agents Cannot Conspire as a Matter of Law, and (4) the Complaint Fails to Allege an Underlying Tort.**

The claims of civil conspiracy and aiding and abetting civil conspiracy fails to state claims upon which relief can be granted since (1) Trustee does not have standing to pursue them,

(2) the Complaint's factual allegations do not support a meeting of the minds between McKenzie and Defendants, (3) a corporation and its officers and agents cannot conspire as a matter of law, and (4) the Complaint fails to allege an underlying tort.[6]

The Bankruptcy Code authorizes a trustee to step into the shoes of the debtor and pursue those claims that the debtor could have pursued as of the commencement of the case, and which constitute property of the estate. *See*, 11 U.S.C. § 541; *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 429 (1972). However, the estate does not include, and Trustee may not pursue, causes of action that the Debtors could not have pursued as of the commencement of the case.

In *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2nd Cir. 1991), the Second Circuit examined the scope of Section 541 and a trustee's entitlement to pursue claims against a brokerage house for aiding and abetting, and unduly influencing [the principle] in making bad trades that dissipated corporate funds. The trustee alleged that Shearson "engaged in conduct intended to strip [the debtor] of its assets." Since the sole stockholder and decision maker not only knew of the bad investments, but actively forwarded them to Shearson, the court found that "a claim against a third party for defrauding a corporation with the cooperation of management accrues to the debtor's creditors, not the guilty corporation. Since the debtor corporation could not pursue the claims pre-petition, the trustee did not have standing to pursue those claims post-petition.

---

[6] A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose by unlawful means. *Operation Rescue-Nat'l v. Planned Parenthood of Houston & S.E. Tex., Inc.*, 975 S.W.2d 546, 553 (Tex. 1998). The elements of civil conspiracy are: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages. *Id.*

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF** – Page 23

Similarly, in *In re Hunt*, 149 B.R. 96 (Bankr. N.D.Tex 1992), Judge Abramson,

considered whether a liquidating trustee had standing to pursue RICO claims against certain

defendants who allegedly participated in the debtors' fraudulent conveyances of over $100

million. Judge Abramson found that under § 541(a)(1), the trustee could pursue the RICO claims

against the defendants –the Hunts' alleged co-conspirators – only to the extent the Hunts

themselves could have done so at the time they filed their bankruptcy petitions. Judge Abramson

concluded that a co-conspirator in a fraudulent act cannot also be a victim entitled to recover

damages. Since the trustee specifically alleged that the debtors participated in the acts giving rise

to the claims, the debtors, as co-conspirators, would have been unable to sue the defendants for

the alleged fraud. Consequently, Judge Abramson concluded that the trustee did not have

standing to pursue the RICO claims.

In *The Mediators, Inc. v. Manney (Matter of Mediators, Inc.)*, 190 B.R. 515 (S.D.N.Y

1995), *affirmed*, 105 F.3d 822 (2nd Cir. 1997), the court examined whether a trustee had standing

to assert claims for aiding and abetting breach of fiduciary duties. The court concluded that

because the company, through its sole shareholder, consented to and participated in the

transactions that formed the basis of the claim, it could not have brought any such claim pre-

petition; thus, the trustee did not have standing to assert it on behalf of the corporation's behalf

post-petition. *See also In re Gaudette*, 241 B.R. 491 (Bankr. D.N.H. 1999) (trustee did not have

standing to pursue debtor and debtor's co-conspirators in alleged scheme to conceal assets since

trustee steps into shoes of debtor and as co-conspirator debtor could not assert claims outside of

bankruptcy).

Reduced to its basic terms, the Complaint is one for civil conspiracy to make fraudulent

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED**
**COMPLAINT AND SUPPORTING BRIEF** – Page 24

transfers. As such, it fails since no such cause of action is recognized under Texas law. See *FDIC v. White*, 1998 U.S. Dist. LEXIS 3020, *6-7 (N.D. Tex., Mar. 4, 1998) (TUFTA does not create personal liability on part of co-conspirator for fraudulent conveyances), citing *Mack v. Newton, supra*; *Forum Ins. Co. v. Devere Ltd.*, 151 F.Supp.2d 1145, 1149 (C.D. Cal. 2001) (same).

The principle found in these cases should equally apply to the instant case. Here, Trustee contends that the transfer and purported concealment constituted an elaborate conspiracy perpetrated by McKenzie with the assistance of Defendants in order to conceal McKenzie's assets from him and McKenzie's creditors. Assuming the truth of these assertions, it is clear that McKenzie could not have pursued a conspiracy claim against Defendants due to his direct and involved participation in the transactions. Since McKenzie could not have pursued such a claim pre-petition, Trustee lacks standing under Section 541 to pursue it post-petition.

Moreover, the Complaint's allegations disprove a crucial element for civil conspiracy – a meeting of the minds. Taking these allegations as true and all fairly drawn inferences, there was no meeting of the minds. This is evidenced in two respects. First, the various different agreements to purchase interests in MMPBV over a two year period prior to the Petition Date. If there was a meeting of the minds in concealing assets, certainly it would not have involved such an inordinate amount of time, documentation and terminated agreements. Second, the allegations that both McKenzie and Schlegel made demands on Reinhard Rauball for the return of the EuroGas shares and bearer shares of Okibi and Claron reflect there was no mutual understanding or master plan.

Since the Complaint evidences no meeting of the minds, the claim of civil conspiracy or

aiding and abetting civil conspiracy fails to state a claim upon which can be granted and should be dismissed.

This claim further fails in attempting to establish a conspiracy between EuroGas and the Rauballs, since Texas law firmly establishes that a corporation and its agents cannot conspire. *See Elliot v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996). "As a matter of law, a corporation or other company cannot conspire with itself, no matter how many of its agents participate in the complained of action." *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 5 (Tex. App. – Corpus Christi 1991, no writ).

Moreover, civil conspiracy and aiding and abetting are derivative torts that depend on independent underlying tort. *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 635 (Tex. 1997); *Texas Carpenters Health Benefit Fund, et al. v. Philip Morris, Inc. et al*, 21 F. Supp. 2d 664, 676 (E.D. Tex. 1998). The Complaint fails to allege an underlying tort as grounds for either the civil conspiracy or aiding and abetting claims.

Based on the foregoing, these claims fail to state a claim upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

      **H.**    **The Claims of Fraudulent Transfer on Behalf of MMPCO and Claron, Okibi, MCK and Jeffrey Fail to State Claims Upon Which Relief Can Be Granted Since (1)Texas Business Corporation Act Section 5.14L is Not Applicable Nor Does it Provide For Such Relief, (2) A Corporation, Whether Directly or Derivatively Through its Shareholders Does Not Have Standing to Assert Fraudulent Transfer Claims, and (3) Texas Law Does Not Apply to <u>Transfers Occurring Abroad.</u>**

The claims of fraudulent transfer on behalf of MMPCO and Claron, Okibi, MCK and Jeffrey fail to state claims upon which relief can be granted since (i)Texas Business Corporation

Act Section 5.14l is neither applicable nor broad enough to provide Trustee the means he seeks, and (ii) a corporation, whether directly or derivatively through its shareholders, does not have standing to assert fraudulent transfer claims.

Section 5.14L provides that with respect to a close corporation "a derivative proceeding brought by a shareholder of a closely held corporation may be treated by a court as a direct action brought by the shareholder for his own benefit."

Section 5.14A states that a "'[d]erivative proceeding' means a civil suit *in the right of a domestic corporation* or, to the extent provided in Section K of this Article, in the right of a foreign corporation." [emphasis added].[7]

In regards to the derivative claims asserted on behalf of MMPCO (Cause J of the Third Amended Complaint), and those brought on behalf of Okibi, Claron, MCK and Jeffrey (Cause K of the Third Amended Complaint), a corporation, directly or through a derivative suit brought on its behalf, has no standing under Texas law to assert fraudulent transfer claims to recover property it transferred.

It is well established under Texas law that only a transferor's creditors hold standing to seek recovery of fraudulently conveyed property.[8] *See*, Tex. Bus. & Com. Code § 24.008; *Skelly v. Hayden*, 2000 WL 1246461 (Tex. App. – Dallas, Sept. 5, 2000) (neither probate estate or decedent's heirs constituted a creditor for standing to void conveyances under Texas fraudulent

---

[7] It is well established under Texas law that a shareholder derivative action is a suit bought by a shareholder in the right of the corporation.  11 WILLIAM V. DORSANEO III,  TEXAS LITIGATION GUIDE, § 162.01 (2000); *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *Faour v. Faour*, 789 S.W.2d 620, 622 (Tex. App. – Texarkana 1990).

[8] For purposes of TUFTA, "creditor" is defined as a person who has a claim.  *See* § 24.002(4).

transfer statutes); *John Hancock Mut. Life Ins. Co. v. Morse*, 124 S.W.2d 330, 332 (Tex. 1939) (conveyances allegedly fraudulent are only defeasible at the instance of the creditors named in the statute); *United States v. Chapman*, 756 F.2d 1237, 1240 (5th Cir. 1985) (Texas fraudulent transfer statute "afford[s] no remedy to a person who was not a creditor of the transferor at the time of the transaction.").

Moreover, it is well established that as between the transferor and the transferee of an alleged fraudulent transfer, Texas law provides that the fraudulently conveyed property does not remain with the transferor. *Janet Gibbs Skelly et al. v. Edward Hayden, supra*; *Markward et al. v. Murrah*, 156 S.W.2d 971, 974 (Tex. 1941) (grantor who conveyed property fraudulently parted with all title and could not have recovered the property); *American National Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983) (recognizing that while creditors may have equitable interest in fraudulently conveyed property, the debtor does not outside of bankruptcy); *Harcrow v. Reed*, 425 S.W.2d 59, 60 (Tex. App. –Waco 1968, writ ref'd n.r.e.) (equitable title remaining in grantor is for benefit of creditors to satisfy their debts and does not inure to the benefit of third parties). Rather, when a grantor transfers property, albeit fraudulently, title of the property passes to the transferee. *John Hancock Mut. Life Ins. Co. v. Morse*, 124 S.W.2d at 332; *Letcher v. Letcher*, 421 S.W.2d 162, 169 (Tex. App. – San Antonio 1967) ("As between the parties to a fraudulent transaction, the transfer designed to defraud creditors passes title to the property, and the grantor may thereafter assert no right, title or interest in the property."). Consequently, as between MMPCO, Okibi, Claron, MCK and Jeffrey and any transferee, to the extent any property is alleged to have been fraudulently transferred, these entities have no right, title or interest in that property.

Since these entities have no right, title or interest in the property allegedly transferred, a civil suit *in the right of* those entities could not stand for purposes of Section 5.14A.

Moreover, Section 5.14L is not applicable to Okibi, Claron, MCK or Jeffrey. As the Complaint clearly alleges, these entities are foreign corporations, having been organized, registered and/or incorporated outside of the country. Jeffrey is an entity formed and registered in the St. Vincent and Grenadines. Claron and Okibi are entities incorporated under the laws of the Netherlands Antilles, and established in Curacao. MCK is a Dutch entity organized under the laws of the Netherlands. Section 5.14A specifically refers to a suit in the right of a "domestic corporation." As these entities are foreign corporations, Section 5.14L does not apply to them.

Section 5.14K of the Texas Business Corporation Act, however, states "[i]n any derivative proceeding brought in the right of a foreign corporation, the matters covered by this Article are governed by the laws of the jurisdiction of incorporation of the foreign corporation." As foreign entities, the laws relating to derivative actions for or on behalf of these corporations are governed by the laws of the jurisdictions in which they were incorporated and/or organized. Thus, the Tex.Bus. & Comm. Code §§ 24.001 *et seq.* is not applicable.

Further, Article 5.14L is not applicable to this action since it was not in effect as of the commencement of this suit in March, 1997. Section L of Article 5.14 became effective on September 1, 1997. Under Texas law, a statute is presumed to operate prospectively unless expressly made retrospective. See Tex. Gov't Code Ann. § 311.022; *Russell v. Board of Trustees of the Firemen, Policemen and Fire Alarm Operators' Pension Fund of Dallas, Texas*, 968 F.2d 489 (5th Cir. 1992). Since there is no Legislative expression for the amendment to apply retrospectively, this statute is inapplicable to the instant action.

DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED
COMPLAINT AND SUPPORTING BRIEF – Page 29

Moreover, these causes of action presuppose that upon piercing the corporate veil of these entities, Trustee has standing to assert fraudulent transfer claims.  There is no support for this theory which was rejected by the Fifth Circuit in *Southmark Corporation v. Crescent Heights VI, Inc. et al. (Matter of Southmark Corporation)*, Case No. 95-10849 * 15 (5th Cir. July 26, 1999 unpublished).

Finally, Tex.Bus & Comm. Code §§ 24.001 et seq. does not apply to transactions undertaken and consummated by the Foreign Entities in Europe.

Based on the foregoing, the derivative causes of action of fraudulent transfer (Causes J and K of the Complaint) fail to state claims upon which relief can be granted.  Accordingly, these claims must be dismissed pursuant to Fed.R.Civ.P. 12 (b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

I.      **The Claim for Avoidable Transfers Under the Bankruptcy Code Fails to State a Claim Upon Which Relief Can Be Granted Since (1) Article 5.14L is not Applicable, and (2) No Legal Basis Exists to Utilize Section 548 to Avoid <u>Transfers From Non-Debtor Entities.</u>**

The claim to avoid the transfer of bearer shares and EuroGas stock fails to state a claim upon which relief can be granted since Article 5.14L is not applicable and no basis exists to utilize the provisions of Section 548 to obtain the avoidance of transfers from non-debtor entities.

First, Section 5.14L of the Texas Business Corporation Act does not apply to Okibi, Claron, MCK and Jeffrey since, as explained above, these entities are foreign corporations and the statutory amendments of September, 1997, are not retrospective.

Second, there is no legal basis under Texas or bankruptcy law affording Trustee the relief he seeks  In a similar case, the Fifth Circuit rejected the claim of a Chapter 11 debtor to reverse

pierce its veil to its subsidiary for the purpose of asserting a fraudulent transfer claim. *See Southmark Corporation v. Crescent Heights VI, Inc. et al. (Matter of Southmark Corporation)*, Case No. 95-10849 * 15 (5th Cir. July 26, 1999 unpublished). In *Southmark*, a chapter 11 debtor filed suit to avoid as fraudulent under § 548, § 544 and Tex. Bus. & Com. Code § 24.005 a certain transaction with defendant Crescent. Prior to the petition, Crescent had purchased a property from Carriage House Corporation ("CHC"), a Southmark subsidiary, in exchange for a promissory note. Several months prior to bankruptcy, Southmark agreed to accept a reduced payout for the note. Subsequent to its bankruptcy filing, Southmark sought to avoid the transfer as fraudulent. In seeking to establish its right to pursue the action, Southmark asserted, among other things, that it and CHC were alter egos and should be treated as one entity in order to own the asserted fraudulent transfer action and the promissory note.

In an unpublished opinion, the Fifth Circuit rejected Southmark's theory. In so doing, the Fifth Circuit examined Texas alter ego law and authority on reverse piercing, including its earlier opinions in *S.I. Acquisition v. Eastway Delivery Service, Inc. (Matter of S.I. Acquisition)*, 817 F.2d 1142 (5th Cir. 1987) and *Zahra Spiritual Trust v United States*, 910 F.2d 240 (5th Cir. 1990). Based on this analysis the Fifth Circuit found that Southmark's theory of recovery distinguishable from those instances in which reverse piercing was accepted. The court concluded that the remedy sought by Southmark was unsupported under existing Texas law.

In addition, this claim is based on the contention that McKenzie beneficially owned the EuroGas shares titled in the Foreign Entities. As stated previously, this contention is contrary to basic corporate law principles that a shareholder of a corporation has no ownership rights in the assets of a corporation.

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF – Page 31**

Based on the foregoing, Defendants submit that the claim for avoidable transfers fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

**J.      The Trustee May Not Seek a Reverse-Piercing of MMPCO's Corporate Veil Since Such Claims Are Personal to Creditors and the Amended Complaint Fails to Allege Any Facts Supporting an Alter Ego Theory.**

Trustee's claims to disregard the corporate separateness of MMPCO, Okibi, Claron, MCK or Jeffrey fail since the Complaint fails to allege the requisite facts supporting a reverse piercing claim and Trustee lacks standing to assert such claims since the remedy is personal to creditors.

The doctrine of reverse-piercing under Texas law was recognized by the Fifth Circuit in *Zahra Spiritual Trust v United States*, 910 F.2d 240 (5th Cir. 1990).  In *Zahra*, the court, upon reviewing Texas cases, concluded that under Texas law "a reverse piercing case rests upon a finding that the individual (debtor) and the corporation should be treated as alter egos." *Id.* at 244.  The court further stated that "[a]lthough the 'illegal purpose' and 'sham to perpetrate a fraud' strands of *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986) may provide bases for disregarding the corporation fiction, a reverse piercing case requires the creditor to establish an alter ego relationship between the individual debtor and corporation in order to treat them as one and the same." *Id.*  Thus, in order to establish a reverse piercing for MMPCO, Okibi, Claron, MCK and Jeffrey, under the dictates of *Zahra* and Texas law, it must be alleged and proved that Mike McKenzie and MMPCO and the Foreign Entities are alter egos.  *Southmark Corporation v. Crescent Heights VI, Inc. et al. (Matter of Southmark Corporation)*, Case No. 95-10849 * 15 (5th Cir. July 26, 1999 unpublished) (recognizing that reverse piercing under Texas law only

DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED
COMPLAINT AND SUPPORTING BRIEF – Page 32

permitted under alter ego theory); *see also, Amoco Chemical Co. v. Tex Tin Corp.*, 925 F.Supp. 1192, 1201 (S.D. Tex. 1996) ("This Court looks to the law of the state of incorporation for each corporate Defendant to determine whether its corporate entity should be disregarded."); *Zahra*, 910 F.2d at 242 (applying state law in determining alter ego liability); *Weaver v. Kellogg et al.*, 1997 U.S. Dist LEXIS 22478 (S.D. Tex., May 22, 1997) (claims to pierce corporate veils are governed by laws of countries of incorporation).

The Complaint does not assert that these entities are alter egos, rather it alleges that these entities were a "sham to perpetrate a fraud upon [McKenzie's] creditors." See Complaint ¶ 126. Since the Complaint does not allege that MMPCO and the Foreign Entities are alter egos of McKenzie, as required by *Zahra*, the Complaint fails to state a reverse piercing claim.

Defendants further submit that based on changes in Texas law since the Fifth Circuit rendered *S.I. Acquisition*, Trustee does not have standing to assert alter ego claims. Based in part upon Texas law then existing as enunciated in *Castleberry*, the Fifth Circuit in *S.I Acquisition* determined that the remedy of alter ego belonged to the bankrupt corporate estate. The court surmised that under Texas law this remedy "appear[ed] to be available to all creditors of the corporation so long as the requisite melding of the corporation and its control entity are established." 817 F.2d. at 1152. The court further stated that the "doctrine of alter ego does not rest upon a particular creditor's dealings with or reliance on the control entity, nor does the doctrine require a showing of fraud on a particular creditor." *Id.* Thus, the court concluded that such a remedy was not personal to the creditor, but if the allegations were proven, it would benefit all creditors.

However, the underpinnings of *S.I. Acquisition* no longer exist due to the statutory

changes made by the Texas Legislature on several occasions, most recently in 1997, amending

article 2.21 of the Texas Business Corporation Act, and Texas case law interpreting those

changes.  These statutory changes effectively superseded *Castleberry*.

Article 2.21 currently reads:

> A.  A holder of shares, an owner of any beneficial interest in shares, or a
> subscriber for shares whose subscription has been accepted, or any affiliate
> thereof or of the corporation, shall be under no obligation to the corporation or to
> its obligees with respect to:           . . .
>
> (2) any contractual obligation of the corporation or any matter relating to or
> arising from the obligation on the basis that the holder, owner, subscriber, or
> affiliate is or was the alter ego of the corporation, or on the basis of actual fraud or
> constructive fraud, a sham to perpetrate a fraud, or other similar theory, *unless the
> obligee demonstrates that the holder, owner, subscriber, or affiliate caused the
> corporation to be used for the purpose of perpetrating and did perpetrate an
> actual fraud on the obligee primarily for the direct personal benefit of the holder,
> owner, subscriber, or affiliate.*  (Emphasis added).

The statute further provides that any liability for an obligation limited by Section A of article

2.21 is "exclusive and preempts any other liability imposed on a holder, owner, or subscriber of

shares under common law or otherwise."  *See* Art. 2.21 B.

This statute has been interpreted by Texas courts as having modified the *Castleberry*

holding in at least two respects; first, that the failure to follow corporate formalities is no longer

grounds for imposing alter ego liability, and second, that an actual fraud on the plaintiff that

provides a direct and personal benefit to the defendant shareholder is a requisite in order to pierce

a corporate veil in the context of contractual obligations and related torts.  *See Farr v. Sun World

Savings Ass'n*, 810 S.W.2d 294, 296 (Tex. App. – El Paso 1991, no writ); *Huff v. Harrell*, 941

S.W.2d 230, 237 (Tex. App. – Corpus Christi 1996, reh'g overruled, writ denied) (jury finding of

alter ego and unfair device insufficient without showing of actual fraud on individual's part for

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED**
**COMPLAINT AND SUPPORTING BRIEF – Page 34**

personal benefit); *Holloway v. Atlantic Richfield Co.*, 970 S.W.2d 641, 645 (Tex. App. – Tyler

1998, no writ) (collateral estoppel inapplicable to plaintiff's attempt to pierce corporate veil on

theory of fraud or sham to perpetrate a fraud since plaintiff must show that corporation

perpetrated an actual fraud on the plaintiff, which fact is necessarily dependent upon the facts of

the particular case, despite such finding against defendant in prior case); *Harco Energy, Inc. V.*

*The Re-Entry People, Inc.*, 23 S.W.2d 389, 397 (Tex. App. – Amarillo 2000, reh'g overruled, no

writ) (evidence legally insufficient to establish alter ego under article 2.21 when plaintiffs failed

to establish that they detrimentally relied on representations for purposes of proving actual

fraud); *Menetti v. Chavers*, 974 S.W.2d 168, 173-74 (Tex. App. – San Antonio 1998, no writ)

(for matters covered by article 2.21(A)(2), the corporate veil may not be pierced absent showing

of actual fraud); *Pharaon v. Fesco, Inc.*, 1999 WL 454621, *3-4 (Tex. App. – San Antonio, July

7, 2000, no writ) (plaintiff must prove that defendant perpetrated an actual fraud to impose

liability by piercing corporate veil); *Texas-Ohio Gas, Inc. v. Mecom*, 2000 WL 1195678 (Tex.

App. – Texarkana, August 23, 2000) (article 2.21 requiring actual fraud to impose personal

liability for corporate obligation was exclusive means to pierce corporate veil).

Federal courts have likewise recognized that in order to impose liability under an alter

ego theory or similar theories a plaintiff must establish that an actual fraud was perpetrated on the

plaintiff for the direct personal benefit of the shareholder or other entity. *See Sid Richardson*

*Carbon & Gasoline Co., Interenergy Resources, Ltd.*, 99 F.3d 746, 752 (5th Cir. 1996); *Thrift v.*

*Hubbard*, 44 F.3d 348, 353 (5th Cir. 1995); *Nordar Holdings, Inc. v. Western Securities (USA)*

*Ltd.*, 969 F.Supp. 420, 422-23 (N.D. Tex. 1997) (single enterprise theory failed where plaintiff

failed to establish essential element that actual fraud was perpetrated on plaintiff for defendant's

direct and personal benefit).

The impact of the actual fraud requirement of article 2.21 was demonstrated in *Thrift v. Hubbard* when the Fifth Circuit found that a company's shareholder was liable under an alter ego theory for only one of two contractual obligations owed the plaintiff. The court found that the allegations and evidence demonstrated that the fraudulent conduct was perpetrated in connection with only the one obligation, not both. *Thrift*, 44 F.3d at 354.

In light of these statutory revisions, the statute's express requirements that a plaintiff allege and prove actual fraud on the part of the defendant and that such fraud has directly and personally benefitted the defendant and the interpretive case authority, it is clear that the basis for extending standing to bankruptcy trustees to assert alter ego claims as a general right of all creditors of a debtor's estate no longer exists. Consequently, the continued viability of *S.I. Acquisition* is questionable at best.

If *S.I. Acquisition* still retains viability following these statutory revisions, there exists a great potential for contradictory and inconsistent results between state and federal courts. Essentially, a debtor's bankruptcy would provide creditors who otherwise could not pierce the corporate veil under article 2.21 in Texas state court greater rights in bankruptcy then they would have outside of bankruptcy. Such a result is directly contrary to the basic tenet of bankruptcy law, which recognizes that property interests are created and defined by state law. *See, Bunter v. United States*, 440 U.S. 48, 55 (1979). This result would further violate the Supreme Court's expression in *Bunter*, that "[u]niform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'"

**DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED COMPLAINT AND SUPPORTING BRIEF – Page 36**

(emphasis added). *Bunter*, 440 U.S. at 55. The continued adherence to *S.I. Acquisition* despite the revisions in Texas law would allow non defrauded creditors a windfall merely by reason of the happenstance of a debtor's bankruptcy.[9] This cannot be the fair or just result. *See Amazing Enterprises v. Jobin (In re M & L Business Machine Co., Inc.)*, 136 B.R. 271, 276 (Bankr. D. Colo. 1992), *aff'd*, 160 B.R. 850 (D. Colo. 1993) (recognizing that limitation on trustee's standing to pursue third parties eliminates distribution problems when creditors who were not injured by third parties' actions are able to receive the benefit of the trustee's recovery).

Regardless of his proper standing to assert alter ego claims, Trustee has failed to allege the necessary facts that if proven would sufficiently establish an alter ego relationship between these entities and Mike McKenzie. The Complaint merely makes conclusory allegations that are grossly insufficient to support imposing a reverse piercing remedy.

Under Texas law, an alter ego theory applies "when there is such unity between the corporation and the individual that the separateness of the two corporation has ceased." *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, (5th Cir. 1999), quoting *Castleberry*, 721 S.W.2d at 272. The factors applied to an alter ego analysis include "the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of

---

[9] The consequences of inconsistent results between state and bankruptcy proceedings are significant. For instance, creditors who would not otherwise be able to pierce the corporate veil pursuant to article 2.21 of the Texas Business Corporation Act in state court would have an incentive to initiate an involuntary proceeding to gain the additional remedy of alter ego just by reason of the bankruptcy. Inconsistent results would also significantly diminish well established legal principles. For example, a creditor that lost its bid to pierce the corporate veil in a pre-petition state court action would ordinarily be barred under principles of res judicata (in state or federal court) from relitigating the issue. However, if the debtor subsequently files bankruptcy that creditor would receive a windfall in the event the trustee was later successful in piercing the veil.

financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.*

The Complaint is devoid of any factual allegations that weigh on these factors or substantiate an alter ego theory between Mike McKenzie and MMPCO, Okibi, Claron, MCK or Jeffrey. *See United States v. North American Construction Corp.*, 101 F. Supp. 2d 500, 528-29 (S.D. Tex. 2000) (alter ego claim dismissed when complaint contained conclusory allegations and failed to allege sufficient facts to support claim); *In re Great Southern Insurance Company Sales Practices Litigation*, 1999 WL 721968 (N.D. Tex. Sept. 15, 1999) (complaint dismissed for failure to state a cause of action when plaintiff failed to make necessary allegations to substantiate alter ego theory).

Moreover, even assuming Mike McKenzie's control and domination over MMPCO's affairs, such fact alone does not legally give rise to a reverse piercing claim. *See Weinman v. Hamilton Properties Corporation (In re Hamilton)*, 186 B.R. 991, 999-1003 (Bankr. D.Colo. 1995) (trustee's reverse piercing claim dismissed for failure to state a claim despite debtor's controlling influence on company as its decision-maker who orchestrated transfer of assets and commingling of funds where claim was an effort to bypass conventional legal mechanisms of reaching the corporation's assets by simply alleging misconduct on debtor's part); *Cascade Energy and Metals Corp. v. Banks*, 896 F.2d. 1557, 1578 (10th Cir. 1990) (it is not enough to show a failure to comply with formalities and that controlling shareholder freely transferred funds among corporate entities, claimants must show that their injury was connected with the

commingling or lack of formalities or how they relied on the entities' separateness).[10]

Based on the foregoing, Defendants submit that Trustee's claims to disregard corporate separateness fail to state claims upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), made applicable hereto by Fed.R.Bankr.P. 7012.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully move for dismissal of the Third Amended Complaint or portions thereof as appropriate as the causes of action asserted therein fail to state claims upon which relief can be granted, and that Court grant them such other and further relief to which it may be justly entitled.

Respectfully submitted,

Mark A. Weisbart (by permission Joseph C. Maldoon)

Mark A. Weisbart
TBN 21102650
Joseph O. Collins, Jr.
TBN 04625500
James S. Brouner
Texas Bar No.  03087285
KESSLER & COLLINS, P.C.
5950 Sherry Lane, Suite 222
Dallas, Texas  75225
Tel: 214-379-0722
Fax: 214-696-5455

ATTORNEY FOR EUROGAS, INC.,

---

[10] In addition, there are many issues to consider in determining whether to allow a reverse piercing theory, including effect of piercing on the company's creditors and its non-culpable shareholders, and availability of conventional legal mechanisms. *See Floyd v Internal Revenue Service*, 151 F.3d 1295, 1298-1300 (10th Cir. 1998); *Stoebner v Lingenfelter*, 115 F.3d 576, 579-80 (8th Cir. 1997) (under Minnesota law, reverse piercing limited when no creditor or shareholder would be adversely affected).

DEFENDANTS' JOINT MOTION TO DISMISS TRUSTEE'S THIRD AMENDED
COMPLAINT AND SUPPORTING BRIEF – Page 39